575 F.2d 311
 3 Media L. Rep. 2467
 COUNCIL FOR EMPLOYMENT AND ECONOMIC ENERGY USE, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
Maine Citizens for Returnable Containers, et al., Intervenors.
 No. 77-1371.
 United States Court of Appeals,
First Circuit.
 Argued March 6, 1978.
Decided May 4, 1978.
 
 Sanford A. Kowal, Boston, Mass., with whom Sallop, Kowal & Davis, Associates, Boston, Mass., were on brief for appellant.
 Diana L. Evans, Washington, D. C., with whom Robert R. Bruce, Gen. Counsel, Danial M. Armstrong, Associate Gen. Counsel, and C. Grey Pash, Jr., counsel, F.C.C., Washington, D. C., were on brief for respondents.
 Thomas H. Wall, B. Dwight Perry, D. Todd Christofferson and Dow, Lohnes & Albertson, Washington, D. C., on brief for intervenor, Plough Broadcasting Co., Inc.
 Randy I. Bellows, Media Access Project, Washington, D. C., on brief for intervenors, Maine Citizens for Returnable Containers.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 LEVIN H. CAMPBELL, Circuit Judge.
 
 
 1
 We are asked to disapprove a Federal Communications Commission ruling made under its "fairness doctrine". On October 26, 1976, one week before the general election in November, the Council for Employment and Economic Energy Use (the "Council") petitioned the Commission for a declaratory ruling with respect to application of the "fairness doctrine" to radio advertisements concerning a referendum question on the Massachusetts ballot. Two days later, the Commission's Broadcast Bureau responded by ruling that the practices about which the Council complained were permissible. After the election, the Council applied for review by the full Commission, which upheld the Broadcast Bureau. The Council then sought review in this court. Before argument the Commission filed a motion to dismiss the appeal for lack of jurisdiction, arguing that the Council is not a "party aggrieved" by a Commission order within the meaning of 28 U.S.C. § 2344.
 
 
 2
 The Council is a political organization formed under Mass.Gen.Laws ch. 55, § 6. It had opposed a proposed law which, if approved in the November 1976, referendum, would have prohibited utilities from selling electricity at discount to large consumers. Commencing October 4, 1976, the Council advertised its views by means of paid radio advertising. Fair Share, Inc., an organization with views opposing those of the Council, thereafter demanded and received from three Massachusetts stations free time to respond to the Council's advertisements. The Council's petition alleged that Fair Share received one free minute of radio time from these stations for every two purchased by the Council. The Council claimed that Fair Share had had adequate resources to pay for the radio time and in fact purchased $30,000 of television time after it had received the free radio time. The petition requested the FCC to rule
 
 
 3
 "that it is unreasonable for stations to offer free time to (Fair Share) solely because the Council purchased time on the stations and that stations carrying the Council's announcements are not required to offer free time to FSI."
 
 
 4
 The Broadcast Bureau upheld the reasonableness of the particular stations' actions on the ground of the wide range of discretion accorded broadcasters in meeting their fairness doctrine responsibilities. The Bureau observed,
 
 
 5
 "It is . . . the responsibility of the licensees within their good faith discretion to determine how to present contrasting views on the issue in question. They may choose to provide free spot or program time or choose any other format in any reasonable manner to discharge their fairness doctrine obligations in their overall programming. The Commission will review the licensees' actions only to determine whether the licensees have acted reasonably and in good faith."
 
 
 6
 Although the voters decided the referendum in accordance with the Council's wishes, the Council pressed an appeal to the Commission. The Council contended that the Bureau had failed to address the question of whether the fairness doctrine compelled the action taken by the three radio stations.
 
 
 7
 "The question presented for review is whether radio stations are required under the 'Cullman rule' * to provide a fixed ratio of free spot announcements to an organization seeking to express views on a ballot proposition different from views expressed in paid spot announcements broadcast on the stations when the organization is fully able to pay for the time it requests.
 
 
 8
 The application did not directly challenge the determination that the radio stations had acted reasonably, and in its reply to comments on the application made by other parties, the Council declared,
 
 
 9
 "(The central issue of this case) is not, as the Bureau suggests, whether 'the licensees abused their discretion in offering free time to (Fair Share),' but, rather, whether the Commission should have imposed any Fairness Doctrine obligations on the stations under the particular facts of this case. It is the Commission's requirement and not the licensees' response to that requirement that is at issue here." (Footnote omitted.)
 
 
 10
 In spite of the way the Council cast the question for review, the Commission chose to delve into the appropriateness of the response by the three radio stations to their perceived obligations. As the Commission put it,
 
 
 11
 "It appears that the Council is requesting the Commission to hold that the stations, by donating time to (Fair Share), did more than was necessary to discharge the fairness doctrine obligations they felt had been incurred by broadcasting the Council's paid spot announcements. As indicated more fully herein, the question, in effect, is not whether the licensees were required to give time to (Fair Share) to broadcast a contrasting view on the electric rate ballot proposition, but whether the stations acted reasonably in determining to discharge their fairness obligations in this particular manner."
 
 
 12
 The Commission ruled that "the Council is correct in its assertion that the stations were not required to give time" to Fair Share. The stations' fairness doctrine obligations could have been met in a number of ways, including paid advertisements, increased news coverage, or debate broadcasts. But considering the totality of the circumstances, the Commission declined to rule that the action taken by the three radio stations was unreasonable or in bad faith. It noted its past refusal to insist upon substantiation of a plea of poverty before an interest group obtained free time pursuant to the fairness doctrine, see Fairness Report, 48 F.C.C.2d 1, 31-32 (1974), and instead relied on the sound discretion and financial self-interest of broadcasters to assure that groups that could pay for air time would be charged.
 
 
 13
 The Commission argues that we lack jurisdiction to entertain this appeal because the dispute between the Council and the radio stations is moot and therefore no longer constitutes a justiciable case or controversy. Supporting this contention are the facts that the referendum over which this conflict arose is over, that the Council's position prevailed, and that the Commission could not now meaningfully order increased broadcasting directed to either side of the issue. The Council responds by pointing out that the question addressed in the 1976 election whether electric utilities may be allowed to sell power at a discount to large consumers remains a live issue in Massachusetts. Further efforts are underway to prohibit these discounts, which the Council will oppose. It is therefore possible that the issue presented in this proceeding will arise once more, leaving the Commission's present declaratory ruling as dispositive unless reversed by this court. The Commission replies that the Council failed to disclose any ongoing political interest past the 1976 election, but under Massachusetts law a political organization such as the Council does not come to an end automatically upon the passing of the particular election for which it was organized. See Mass.Gen.Laws ch. 55, § 6. The very fact that the Council continues to seek a decision after the election is some indication that its concern is real and continuing. We do not think the case is moot. See, e. g., First National Bk. of Boston v. Bellotti, --- U.S. ----, ----, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974).
 
 
 14
 The FCC contends that the Council was not aggrieved by the Commission's decision, and thereby lacks standing under 28 U.S.C. § 2344. The Commission argues that in deciding whether radio stations were required to give free time to the Council's opponents, it resolved in the Council's favor a question described by the Council as the only issue on review. But the Commission also ruled that the manner in which the three radio stations satisfied their fairness obligations in the 1976 campaign was reasonable, a conclusion which the Council has disputed throughout these proceedings. We think the Council is aggrieved.
 
 
 15
 The narrow issue before us is whether the Commission could properly allow a radio station to allot free time to a political organization to rebut advertisements paid for by another, where subsequent events indicate that the rebutting organization might have been able to pay for the time received. Significantly, the Council has not alleged that the radio stations deliberately chose to ignore the ability of Fair Share to pay or acted in bad faith. Rather the thrust of its contention seems to be that the radio stations acted unreasonably even if they believed in good faith that Fair Share could not, or perhaps for some good reason, would not, pay. So stated, the Council's position is unsupportable. The fairness doctrine has been upheld as constitutional by the Supreme Court, Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). The Court has said "that the Congress and the Commission do not violate the First Amendment when they require a radio or television station to give reply time to answer personal attacks and political editorials." Id. at 396, 89 S.Ct. at 1810. The focus of the fairness doctrine is upon the public dissemination of both sides of an issue rather than protection of particular advertisers. While, with respect to payment for time, there may be a point at which a calculated inequality of treatment by broadcasters among advertisers would raise a litigable issue, we see nothing arbitrary about the Commission's hands-off policy here. The Commission has done no more than rule that the donating of reply time is one acceptable means of meeting a licensee's obligations under the Communications Act, at least where there is no showing that the licensee had deliberately and discriminatorily disregarded a respondent's ability to pay.* The Commission may well believe that for it to try to instruct broadcasters when to offer free time and when not would deprive them of flexibility needed to apply the fairness doctrine in the varied situations that arise. Broadcasters may normally be expected to charge for time when feasible, but circumstances may arise where the public interest is better served by an allotment of free time. In any event, we see nothing unreasonable, unconstitutional or otherwise illegal in the Commission's policies in this regard.
 
 
 16
 The Council argues that a fixed ratio of reply time to paid political advertising time constitutes an unconstitutional quota in derogation of its first amendment and equal protection rights and cites a variety of race discrimination cases to support its claim. The argument is patently absurd: these ratios, even if they were as rigidly imposed as the Council represents, in no way restricted the amount of time available to the Council. The Council's only complaint is that its opponents also had an opportunity to communicate their views. It would be a novel interpretation of the first amendment to find within its strictures a right not to be controverted in public political debate.
 
 
 17
 Petition dismissed. Costs for Commission.
 
 
 
 *
 "Cullman Broadcasting Company, Inc., 40 FCC 576 (1963)."
 
 
 *
 This is not to suggest that broadcasters are under any duty to investigate the financial status of those groups seeking free air time or that they should require financial disclosure from such groups. The Commission does not require such conduct and we find it proper and reasonable that it does not