COUNCIL FOR EMPLOYMENT AND ECONOMIC ENERGY USE,
Plaintiff, Appellant,

v.

WHDH CORPORATION et al.,
Defendants, Appellees.

No. 77–1283.

United States Court of Appeals,
First Circuit.

Argued Sept. 14, 1977.

Decided June 23, 1978.

Sanford A. Kowal, Boston, Mass., with whom Sallop, Kowal & Davis, Associates, Boston, Mass., was on brief, for plaintiff, appellant.

John R. Hally, Boston, Mass., D. Todd Christofferson, Washington, D. C., and Robert W. Meserve, Boston, Mass., with whom Alan D. Mandl and Nutter, McClennen & Fish, Boston, Mass., were on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, WOLLENBERG,* District Judge.

WOLLENBERG, District Judge.

■ This private antitrust action was brought in the District Court for the District of Massachusetts on November 2, 1976, by a political committee,[1] the Council for Employment and Economic Energy Use (the Council), against four radio station operators, WHDH Corporation, General Electric Broadcasting Co., Inc., RKO General Broadcasting, Inc., and Plough Broadcasting Co., Inc. (the broadcasters). The Council alleged in its complaint that the broadcasters had entered into a conspiracy in restraint of trade[2] in violation of section 1 of the Sherman Antitrust Act[3] by agreeing together on an amount of free advertising time to provide opponents of the Council's position on a public initiative referendum question to be voted upon on the November, 1976 Massachusetts ballot. The Council sought money damages pursuant to section 4 of the Clayton Act[4] and injunctive relief pursuant to section 16 of the Clayton Act.[5] Motions to dismiss for failure to state a claim upon which relief could be granted were filed by three of the broadcasters in January, 1977.[6] The Council was subsequently granted several extensions of time within which to file a brief in opposition to the broadcasters' motions to dismiss. However, a fourth such motion for an extension

---

* Of the Northern District of California, sitting by designation.

1. A political committee is defined by Massachusetts General Laws, ch. 55, § 1 in part as:
   . . . any committee, association, organization or other group of persons . . . which receives contributions or makes expenditures . . . for the purpose of opposing or promoting a charter change, referendum question, constitutional amendment, or other question submitted to the voters.

2. The complaint alleged that:
   On or about October 8, 1976, defendants, their agents, servants, or employees, entered into an illegal combination and/or conspiracy in restraint of trade by doing acts, including providing that for every two advertisements on their radio stations purchased by the plaintiff, their agents, servants, or employees, to promote the plaintiff's opposition to [the ballot issue], said defendants, their agents, servants, or employees, would provide one free advertising space to the opponents of the position of the plaintiff on the referendum [ballot issue]. This was done without any inquiry by the defendants, their agents, servants or employees, of the ability to pay of the opponents to the plaintiff's and without reference to the different coverage of [the ballot issue] afforded by each individual radio station owned by the defendants.
   In fact said defendants, from on or about October 8, 1976, continuing to the date of the election, did provide free space to the opponents of the plaintiff's position . . . on the basis of one free advertising space for each two spaces purchased by the plaintiff.

3. 15 U.S.C. § 1 provides:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . . .

4. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides:
   Any person who shall be injured in his business or property by reason of anything forbidden by the antitrust laws may sue therefor in any district court of the United States . . . and shall recover threefold the damages by him sustained . . . . .

5. Section 16 of the Clayton Act, 15 U.S.C. § 26, provides:
   any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity . . . . .
   Since the Council has succeeded in the political objective for which it was organized of defeating Question 7 on the November, 1976, Massachusetts ballot, and apparently will not in the future be seeking broadcast time, we see no basis for considering the claim for injunctive relief against the broadcasters.

6. One of these defendants, Plough Broadcasting Co., moved in the alternative for summary judgment. This motion was supported by the affidavit of the General Sales Manager of several radio stations in the Boston area owned by Plough Broadcasting Co., to the effect that there was no conspiracy but rather that decisions concerning ballot proposition broadcasts were made independently by the stations for the purpose and with the intent of satisfying the requirements of the fairness doctrine.

was denied on May 5, 1977,[7] and on May 10, 1977, the trial court entered an order pursuant to Fed.R.Civ.P. 12(b)(6) dismissing the Council's complaint. On May 13 the Council filed a motion to vacate the order of dismissal and on May 20 filed a motion to alter the judgment of dismissal by vacating it to permit the filing of an amended complaint. Both of these motions were denied on May 24, 1977.[8] The Council appeals from the order and judgment dismissing its complaint and from the denial of its motions to alter the judgment and to vacate the order of dismissal.

### FACTS

The Council was organized for the stated purpose of encouraging the creation of employment and opportunities in economic energy use in Massachusetts by defeating an initiative petition which if passed would have had the effect of limiting discounts for volume purchasers of electricity. As part of its political campaign, the Council engaged in extensive advertising in the media, part of which involved the purchase of broadcasting time from the defendants and from other stations in Rhode Island, Massachusetts, and New Hampshire. During the course of the campaign, the broadcasters afforded free air space to Fair Share, Inc., a public interest group supporting the passage of the referendum issue, pursuant to their obligations under the fairness doctrine to provide such time for the dissemination of opposing political views.[9] The Council lodged a complaint on October 26, 1976, with the Federal Communications Commission (FCC) against three of the broadcasters, not including WHDH, stating its belief that Fair Share, Inc. had the financial means of purchasing time on the radio stations since it had purchased a considerable amount of broadcast time on a Massachusetts television station subsequent to its receipt of free radio time. The FCC made an initial determination that the broadcasters had acted reasonably in discharging their affirmative responsibility to encourage and implement the broadcast of contrasting views in each station's overall programming.[10] The FCC noted that licensees which had presented one side of a controversial issue of public importance by broadcasting sponsored programming could not reject exposition of contrasting viewpoints on that issue merely because they could not obtain paid sponsorship for that presentation, *citing In re Cullman Broadcasting Co., Inc.*, 40 F.C.C. 576 (1963). The full Commission affirmed this ruling on June 27, 1977. We upheld the Commission's decision in *Council for Employment and Economic Energy Use v. FCC*, 575 F.2d 311 (1st Cir. 1978).

### I

The leading case of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), aptly set out the established rule for

7. The fourth motion was filed after the plaintiff's third extension had expired on April 25, 1977. Counsel for plaintiff did not file an opposition to the motion to dismiss made by General Electric Broadcasting Co., Inc., and filed no opposing brief or counter affidavit prior to the order of May 10, 1977, which granted the motions to dismiss.

8. The order of the court noted that consideration was given to the various motions and supporting memoranda of law filed by the Council subsequent to the dismissal of its complaint on May 10, 1977. These included a late brief in opposition to the motions to dismiss and to the motion for summary judgment. The order stated:

1) That plaintiff's motion to vacate the order dismissing the complaint is denied as without merit;

2) That plaintiff's motion to amend the judgment of dismissal by vacating it, under Fed. R.Civ.P. 59(e) is denied as inappropriate; but treating it the same as a motion for relief pursuant to Fed.R.Civ.P. 60(b) it is denied.

9. *See generally Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *In re Handling of Public Issues Under the Fairness Doctrine and the Public Interest Standards of the Communications Act*, 48 F.C.C.2d 1 (1974); *In re Applicability of the Fairness Doctrine in the Handling of Controversial Issues of Public Importance*, 40 F.C.C. 598 (1964); *In re Cullman Broadcasting Co.*, 40 F.C.C. 576 (1963).

10. Appendix to appellant's brief at 62–63.

dismissal under Fed.R.Civ.P. 12(b)(6): "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. at 102. The original intent of Congress in enacting the Sherman Act was to suppress and penalize restraints on *commercial competition* in the marketing of goods and services. *Apex Hosiery Co. v. Leaders*, 310 U.S. 469, 493, 495, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). It is difficult to conceive how the present complaint fits under that general rubric. Moreover, the Supreme Court has made clear its refusal to permit parties to "impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act." *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961). *See also United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The only exceptions to this rule countenanced by the Court were situations in which the political activity at issue was "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Id.* 365 U.S. at 144, 81 S.Ct. at 533. Simply stating the exception demonstrates that it has no relationship to the facts alleged in appellant's complaint. This case involves political opponents, not commercial competitors; and political objectives, not market place goals.

Since appellant seems to have great difficulty in understanding the point we carefully point out the differences between the cases it cites in its brief and the present litigation.[11] The cited cases involve commercial enterprises, competing in particular markets, arguing over issues which will determine the commercial success and profitability of one or the other of the parties to the dispute. While the government is involved in all three cases in a commercial or regulatory capacity the contexts of the disputes are fundamentally commercial not political. The present case involves access to the public media by expressly political organizations for the purpose of influencing political decisions of the general electorate.

If appellant's view of the Sherman Act's scope prevailed, it is difficult to imagine why every dispute in a political contest among the major political parties would not implicate the antitrust laws. This of course is precisely what the Supreme Court in the *Noerr* case indicated it was attempting to avoid. The Court explained, "Congress has traditionally exercised extreme caution in legislating with respect to problems relating to the conduct of political activities, a caution which has been reflected in the decisions of this Court interpreting such legislation. All of this caution would go for naught if we permitted an extension of the Sherman Act to regulate activities of that nature simply because those activities have a commercial impact and involve conduct that can be termed unethical." *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., supra*, 365 U.S. at 141, 81 S.Ct. at 531 (footnote omitted).

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513–14, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), does not support appellant's claim. There, the Supreme Court concluded that, "A combination of entrepreneurs to harass and deter their competitors from having 'free and unlimited access' to the agencies and the courts" would result in an antitrust viola-

11.  The lower court cases cited by appellant are clearly inapposite to the present case. *George W. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 424 F.2d 25 (1st Cir. 1970), involved direct commercial competitors attempting to sell their products to public bodies under competitive bidding procedures. *Hecht v. Pro Football, Inc.*, 144 U.S.App.D.C. 56, 444 F.2d 931 (1971), concerned attempts by hopeful football franchise owners to alter a restrictive covenant in a public stadium lease that permitted only one football franchise owner to have access to the stadium. In *Woods Exploration and Producing Co., Inc. v. Aluminum Co. of America*, 438 F.2d 1286 (5th Cir. 1971), certain owners of tracts of land in a natural gas field accused other owners of giving false data to a state commission regulating natural gas production.

tion. *Id.* at 515, 92 S.Ct. at. 614. We find no such denial in the present case. In *Council for Employment and Economic Energy Use v. FCC, supra,* we rejected appellant's claim that the action of radio stations in giving the Council's political opponents a fixed ratio of free reply time to the Council's paid political advertising violated the Council's first amendment rights with this comment,

> The argument is patently absurd; these ratios, even if they were as rigidly imposed as the Council represents, in no way restricted the amount of time available to the Council. The Council's only complaint is that its opponents also had an opportunity to communicate their views. It would be a novel interpretation of the first amendment to find within its strictures a right not to be controverted in public political debate.

*Id.* at 315.

Any contention that providing public air time to one's opponents somehow denies a party free and unlimited access to government agencies, the courts, or any part of the political process is equally meritless. Petitioner's proper avenue for judicial relief was exercised through FCC administrative channels and in judicial review of the FCC's decision. The antitrust laws provide no further remedy.

## II

 We also determine that the motions to vacate or alter the judgment were properly denied by the district court. It is clear that a Fed.R.Civ.P. 60(b) motion is not a substitute for the normal appeal procedure and is not a means for the mere reconsideration of a litigant's previously existing case. *Kowall v. United States,* 53 F.R.D. 211, 216 (W.D.Mich.1971). Normally leave to amend should be liberally granted following dismissal on the pleadings. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). However, we cannot say it was an abuse of the court's discretion not to allow an amendment to the complaint which would be futile. *See Ondis v. Barrows,* 538 F.2d 904, 909 (1st Cir. 1976);

*United States v. Newbury,* 123 F.2d 453 (1st Cir. 1941); *Stebbins v. Weaver,* 537 F.2d 939, 942 (7th Cir. 1976). Amendments would not change the essential charge which today we find not to constitute an antitrust violation. We therefore find that it was proper for the court, having dismissed the complaint as not stating sufficient facts on which to base an antitrust claim, to deny the motions to amend that judgment and allow amendments to the pleadings.

*Affirmed. Double costs.*