**CITY OF CLEVELAND, Plaintiff,**

v.

**The CLEVELAND ELECTRIC ILLUMI-NATING COMPANY, Defendant.**

**Civ. A. No. C75–560.**

United States District Court,
N. D. Ohio, E. D.

Sept. 13, 1980.

William B. Norris, Hahn, Loeser, Freedheim, Dean & Wellman, James E. Young, Thomas E. Wagner, Director of Law, City of Cleveland, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This matter is presently before the Court upon the Motion of Plaintiff for a Leave to Offer Evidence or, in the Alternative, for a Separate Jury Trial on the Issue of the Tolling of the Statute of Limitations. Plaintiff seeks the requested leave pursuant to this Court's Order in Limine of August 19, 1979,[1] for the purpose of presenting

---

1. The Court's August 19th decree provides in material part as follows:

Accordingly, for the foregoing reasons, during the course of trial, no party shall, in the presence of the jury, allude to, refer to, or attempt to convey, either directly or indirectly, in any manner the findings, conclusions, determinations, or substance of any NRC or FPC administrative determination as such determination reflects upon the defendant's acts alleged herein to be in violation of sections 1 or 2 of the Sherman Act. The Court is mindful, however, that occasions may arise during trial when a party deems it necessary to discuss, or to elicit testimony concerning, proceedings before the NRC or the FPC. In those instances, counsel shall request a determination by the court as to its propriety and necessity thereof, which request shall be made outside the hearing of the jury.

The Court undertook to better define the contours of the aforesaid Order, and elaborate on the theoretical underpinnings thereof, in this

evidence in support of its contention that the four-year statute of limitations contained in 15 U.S.C. § 15b has been tolled by both the application of equitable principles and by virtue of the statutory provisions of Section 5(i) of the Clayton Act, 15 U.S.C. § 16(i). Defendant The Cleveland Electric Illuminating Company (CEI) has responded in opposition.

A review of the instant record discloses that on November 9, 1979, the City, for the first time in this protracted litigation, sought leave of Court to amend its original Complaint filed July 1, 1975. Among the numerous amendments tendered by the City was a series of allegations which maintained, in effect, that an advice letter of the United States Attorney General, dated December 17, 1973, and forwarded to what is currently the Nuclear Regulatory Commission (NRC), operated to toll the applicable limitations period in this case pursuant to Section 5(i) of the Clayton Act.

This Court subsequently disallowed a majority of the City's proposed amendments, predicating its determination in principal part upon "the plaintiff's undue delay in amending and supplementing its original Complaint, and the manifest prejudice to the defendants resulting therefrom in the event substantial amendment were to be permitted". Memorandum and Order of

January 15, 1980, at p. 10. Of particular relevance to the motion presently in issue, the Court also held, alternatively, that "the City's attempt to expand the applicable limitations period by resort to Section 5(i) of the Clayton Act would appear to be precluded by the Supreme Court's decision in *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 98 S.Ct. 2370 [57 L.Ed.2d 239] (1978)". In so holding, the Court expressly acknowledged the persuasive force of CEI's assertion that the aforementioned advice letter, as a matter of law, did not occasion a tolling of the statute of limitations under Section 5(i) of the Clayton Act.[2]

Plaintiff's current motion then, insofar as it is premised upon the statutory tolling provisions of Section 5(i), urges the Court to reconsider its alternative holding of January 15, 1980. In challenging the propriety of that disposition, the City argues that any determination as to the applicability herein of Section 5(i) requires the resolution of "[f]our major factual questions" which the plaintiff insists are triable by jury. The purported issues of fact which the City maintains are properly submitted to the jury are as follows:

(1) Did the antitrust review proceedings involving the City and CEI which were conducted before the NRC pursuant to 42 U.S.C. § 2135(c)(5) after receiving the

---

tribunal's recent Memorandum and Order of August 18, 1980, 538 F.Supp. 1257.

**2.** Plaintiff's contention that the legal sufficiency of its proposed tolling amendment was not properly before the Court at the time of its January 15, 1980 decree is hardly persuasive. It is well-settled that a trial court may appropriately assess the legal sufficiency of a contemplated amendment in considering the propriety of granting leave to amend under Rule 15(a), Fed.R.Civ.P. 6, Wright and Miller, Federal Practice and Procedure § 1487 at 432–433 (1971). *See Council For Employment and Economic Energy Use v. WHDH Corp.*, 580 F.2d 9, 13 (1st Cir. 1978), *cert. denied*, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979); *Dell v. Heard*, 532 F.2d 1330, 1334 (10th Cir. 1976); *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board*, 542 F.2d 1076, 1085–1086

(9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977); *DeLoach v. Woodley*, 405 F.2d 496 (5th Cir. 1968). This is apparent from the leading case of *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) which clearly indicates that amendment under Rule 15(a) is favored only in those instances where "the underlying facts or circumstances relied upon... may be a proper subject of relief". *Foman v. Davis, supra* at 182, 83 S.Ct. at 230. In accordance with the foregoing principles, the Sixth Circuit Court of Appeals has sustained the denial of Rule 15(a) relief which was predicated in principal part upon the lower court's determination that the proposed amendment was "on shaky ground" due to "the questionable applicability" of interpleader in the factual setting presented. *Banque de Depots v. National Bank of Detroit*, 491 F.2d 753, 757 (6th Cir. 1974).

Attorney General's advice that there "may be adverse antitrust aspects" constitute a "civil proceeding" under Section 5(i) of the Clayton Act?

(2) Did the United States institute such antitrust review proceedings before the NRC?

(3) Was the purpose of such antitrust review proceedings before the NRC "to prevent ... violations of the antitrust laws?"

(4) Are the matters complained of by the City in the proceeding before this Court based in whole or in part on any matter complained of by the United States in the antitrust review proceedings before the NRC?

These allegedly factual inquiries reflect the provisions of Section 5(i) of the Clayton Act, 15 U.S.C. § 16(i), which state:

(i) Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private or State right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however*, that whenever the running of the statute of limitations in respect of a cause of action arising under section 15 or 15c of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued.

■ In assessing the plaintiff's contention, the Court would observe initially that it finds the City's suggestion that the above-enumerated inquiries represent factual issues, triable to the jury, entirely unpersuasive. It is apparent, for example, as CEI correctly asserts, *see* Defendant's Memorandum Opposing Plaintiff's Motion

for Leave to Offer Evidence, etc., at p. 2, that the initial two issues identified by the City are in essence questions of statutory construction, properly resolved in the first instance by the trial court. More fundamentally, this Court, as appears in greater detail below, is of the firm conviction that the propriety of applying Section 5(i) of the Clayton Act in the instant action is a matter which requires no resolution of underlying contested factual issues but represents instead an instance in which "the sole question [presented] is the applicability or interpretation of a statutory provision". 5 Wright and Miller, Federal Practice and Procedure § 1367 at 686 (1969). That is to say, the Court is of the opinion that, under the circumstances presented, the applicability herein of the tolling provisions of the Clayton Act is purely a question of law which this tribunal, in view of the mandate of *Greyhound Corp. v. Mt. Hood Stages, Inc., supra*, must resolve adversely to the plaintiff.

■ As previously indicated, the City's effort to invoke the statutory tolling provisions of Section 5(i) is predicated upon the Attorney General's advice letter of December 17, 1973 to what is currently the NRC. This advice letter, as its very terms would indicate, was prepared by the Department of Justice at the request of the NRC, *see* 42 U.S.C. § 2135(c)(1), in connection with certain previously instituted administrative proceedings initiated when CEI and various other utilities jointly applied to the Commission for licenses to construct and operate nuclear generating facilities.

The licensing proceedings in question encompassed the consideration of three separate applications, the first of which was submitted by CEI and the Toledo Edison Company on August 1, 1969. Following the issuance of an initial construction permit, the City of Cleveland, on July 6, 1971, petitioned the Commission to intervene in the proceeding, and urged the Licensing Board to conduct a hearing to determine whether "the activities under the license would cre-

ate or maintain a situation inconsistent with the antitrust laws". 42 U.S.C. § 2135(c)(5). Although the Attorney General subsequently advised that there was no current necessity for such a determination, the Commission Regulatory Staff nonetheless recommended to the Licensing Board that the City's request to intervene be granted and that an antitrust hearing pursuant to 42 U.S.C. § 2135(c)(5) be undertaken.

It would appear that the Licensing Board deferred further action on the foregoing recommendations until after the March, 1973 filing of a second license application, submitted by CEI in conjunction with certain other utilities. It is this particular application which prompted the December 17, 1973 advice letter currently in issue, wherein the Attorney General suggested that the license request raised potential antitrust questions, the resolution of which required a review hearing.[3] Following the receipt of the advice letter, the Licensing Board, on March 15, 1974, granted the City's requests to intervene in each of the theretofore instituted licensing proceedings,

and ordered a consolidated hearing to ascertain whether activities under the contemplated licenses would create or maintain a situation inconsistent with either the antitrust laws or the policies underlying those laws.

On the basis of the foregoing chronology, the City maintains that by reason of the December 17th advice letter, the United States has "instituted" a civil proceeding within the meaning of Section 5(i) of the Clayton Act. A review of the principles enumerated by the Supreme Court in *Greyhound Corp. v. Mt. Hood Stages, Inc., supra,* discloses, however, that the plaintiff's contention is without merit.

In the aforesaid cause, Mt. Hood, in an earlier administrative proceeding before the Interstate Commerce Commission (ICC), had opposed an application of Greyhound for permission to acquire certain additional bus lines, alleging that the proposed acquisitions would enable its larger competitor to injure if not destroy Mt. Hood's business. The ICC, however, acceded to Greyhound's request, premising the determination upon the representations of Greyhound that the

---

**3.** It would appear that at this juncture of the licensing proceedings, the Commission was required under the provisions of 42 U.S.C. § 2135 to conduct an antitrust review hearing. 42 U.S.C. § 2135(c)(5) provides:

Promptly upon receipt of the Attorney General's advice, the Commission shall publish the advice in the Federal Register. Where the Attorney General advises that there may be adverse antitrust aspects and recommends that there be a hearing, the Attorney General or his designee may participate as a party in the proceedings thereafter held by the Commission on such licensing matter in connection with the subject matter of his advice. The Commission shall give due consideration to the advice received from the Attorney General and to such evidence as may be provided during the proceedings in connection with such subject matter, and shall make a finding as to whether the activities under the license would create or maintain a situation inconsistent with the antitrust laws as specified in subsection (a) of this section.

This is not to imply, however, that the Attorney General's recommendation that an antitrust determination be undertaken is an essential prerequisite to NRC inquiry into the antitrust aspects of a license application. Indeed, the

Commission's Licensing Appeal Board has explicitly recognized that an antitrust hearing "may also be precipitated by some other governmental entity or by a private party's petition." *In the Matter of Toledo Edison Co.,* et al., ALAB–560 (September 6, 1979) (Opinion of Rosenthal and Salzman, at pp. 7–8). *See e.g. Pacific Gas and Electric Co.,* (Stanislaus Nuclear Project, Unit 1), ALAB–550 (June 15, 1979). The NRC's rules of practice similarly acknowledge the propriety of conducting antitrust review proceedings solely at the behest of an interested party, providing in part:

The Director of Regulation will also publish in the Federal Register a notice that the Attorney General has not rendered any such advice. The notice published in the Federal Register will also include a notice of hearing, if appropriate, *or, if the Attorney General has not recommended a hearing, will state that any person whose interest may be affected by the proceeding may, file a petition for leave to intervene and request a hearing on the antitrust aspects of the application.*

10 C.F.R. Part 2, App. A, X(d) at 112–113 (1980) (emphasis supplied).

contemplated acquisitions would not adversely affect existing business relationships with Mt. Hood. Thereafter, following Greyhound's apparent failure to abide by its previous representations, Mt. Hood petitioned the ICC to reopen the acquisition proceedings for further hearing to consider the necessity of attaching terms and conditions to the acquisitions, or alternatively, to assess the propriety of requiring Greyhound to divest itself of the acquisitions in issue. The United States subsequently moved for leave to intervene in the ICC proceedings, and urged the Commission to conduct a full adversary hearing on Mt. Hood's allegations which, in the Government's opinion, represented a serious charge. The United States was permitted to intervene, and after extensive administrative proceedings were undertaken, the ICC specifically ordered Greyhound to eliminate the anticompetitive practices of which Mt. Hood had complained.

In an ensuing civil antitrust action between these two competitors, predicated upon essentially the same allegations Mt. Hood advanced in the ICC proceedings, the trial court held that the Government's petition to intervene served to toll the statute of limitations pursuant to Section 5(i) of the Clayton Act. This determination was affirmed by the United States Court of Appeals for the Ninth Circuit. *Mt. Hood Stages, Inc. v. Greyhound Corp.*, 555 F.2d 687 (9th Cir. 1977). In holding that the Government's intervention in the ICC proceeding operated to suspend the running of the limitations period, the Court of Appeals found that "[t]he literal wording of section [5(i)] is not controlling." *Id.* at 699. The Ninth Circuit concluded that the congressional purpose underlying Section 5(i) would properly be advanced by " 'treating intervention by Antitrust Division lawyers as the functional equivalent of a direct action by them.' " *Id.* at 700.

The Supreme Court found the "functional equivalence" rationale of the lower courts entirely unpersuasive. The Court emphasized at the very outset that the statutory language of Section 5(i) is not to be so lightly disregarded, stating in pertinent part:

> Logic and precedent dictate that " '[t]he starting point in every case involving construction of a statute is the language itself.' " *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 472, 97 S.Ct. 1292, 1300, 51 L.Ed.2d 480 (1977), and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976), each quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (POWELL, J., concurring). Examination of the language of § 5(i) prevents acceptance of respondent's position.

> Section 5(i) begins: "Whenever any civil or criminal proceeding is *instituted by the United States* ..." (Emphasis added). The ICC proceeding at issue here plainly was not one instituted by the United States. As the foregoing statement of facts demonstrates, and as the Court of Appeals acknowledged, "Mt. Hood rather than the United States instituted the proceedings." 555 F.2d, at 699. It strains accepted usage to argue that a party who intervenes in a proceeding instituted by someone else has also "instituted" that proceeding.

*Greyhound Corp. v. Mt. Hood Stages, Inc., supra*, 98 S.Ct. at 2375. The Court accordingly refused to embrace an expansive interpretation of Section 5(i) which would sanction the tolling of the statute "anytime the United States participates in any regulatory proceeding". *Id.* at 2378.

The foregoing principles are plainly dispositive of the plaintiff's statutory tolling claim. Simply stated, the licensing proceedings here in issue were not in any way initiated by the United States but were instead, as the record makes unmistakably clear, instituted by CEI and others when the applicants petitioned the Commission for permission to construct and operate nuclear generating facilities. The foregoing

advice letter, rather than serving to institute the licensing proceedings, was in fact a direct consequence of the previously submitted applications, occasioned in part by the statutory requirement that the Commission secure the Attorney General's advice. 42 U.S.C. § 2135(c)(1). It would clearly strain accepted usage to contend that a correspondence received in connection with an ongoing administrative proceeding served to "institute" the very proceeding which solicited the correspondence. As was true in the *Mt. Hood* litigation, "the language of § 5(i) prevents acceptance of [plaintiff's] position." *Greyhound Corp. v. Mt. Hood Stages, Inc., supra* at 2375.

In reaching this determination, the Court is fully cognizant of substance of note 20 to the Supreme Court's aforesaid opinion, which states as follows:

> We do not mean to suggest that no rational distinctions concerning the Government's participation in regulatory proceedings can be drawn. It may be appropriate, in a given case, to apply Section 5(i) where the Government's petition to intervene in fact charged a violation of the antitrust laws and demanded relief to prevent, restrain, or enjoin that violation. That, however, is not this case, and we expressly decline to offer any view as to the applicability *vel non* of Section 5(i) in such a context.

*Id.* at 2378 n.20.

It is apparent from the foregoing passage that the Supreme Court expressly refused to hold that intervention by the United States would, under even the most favorable circumstances, serve to toll the statutory limitations period pursuant to Section 5(i). The Court did intimate, however, that Government intervention would suffice to trigger the tolling provisions of the Clayton Act, if at all, only in those instances where the petition "in fact charged a violation of the antitrust laws and demanded relief to prevent, restrain or enjoin that violation". *Id.*

This Court is currently unaware of any legal authority which had favorably entertained a litigant's attempt to avail of the tolling provisions of Section 5(i) solely on the basis of the Government's intervention in a prior administrative proceeding. Even assuming, *arguendo*, that such intervention may, in appropriate instances, serve as a proper basis for invoking Section 5(i), the Court is of the opinion that the substance of the advice letter of December 17, 1973, fails to satisfy the above-enumerated criteria of *Greyhound Corp. v. Mt. Hood Stages, Inc.* A review of the advice letter discloses that the correspondence fails to charge CEI with any actual "violation[s] of the antitrust laws", *id.* at 2378, n.20, and, moreover, fails to specifically demand or even recommend that Commission prescribe any particular relief. Rather than advancing specific charges of antitrust violations, and seeking relief therefrom, the advice letter merely identifies certain potential "inconsistencies" with the antitrust laws which may materialize at some future interval in the event CEI subsequently refuses to accede to various requests, including those of the City and a second municipality for participation in the nuclear facilities in question. The Attorney General's advice letter is thus prospective in focus, and accordingly, recognizes that the development of any ensuing antitrust "inconsistencies" is largely contingent upon the outcome of ongoing negotiations between CEI, the City and other intervening parties. Under these circumstances, it cannot be concluded that the contents of the advice letter in any way resemble the charging allegations typical of a criminal indictment or, alternatively, a civil complaint. It would appear instead that the Attorney General's advice letter, like the Government's petition to intervene in the *Mt. Hood* litigation, reflects, in essence, only a preliminary determination by the Department of Justice that sufficient allegations have been advanced by those parties contesting the license applications to warrant Commission inquiry into the antitrust implications of the license requests.

As intimated in the Court's January 15, 1980 decree, the principles of *Greyhound*

*Corp. v. Mt. Hood Stages, Inc.,* and the clear mandate of Section 5(i), thus compel the conclusion that the plaintiff's attempt to avail of the tolling provisions of the Clayton Act is, as a matter of law, devoid of merit. The City's instant motion, insofar as it is predicated upon the statutory tolling provisions of Section 5(i), must accordingly be denied.

■ Plaintiff has also suggested, in a rather conclusory fashion, that the circumstances underlying this controversy warrant an equitable tolling of the applicable four-year limitations period. Inasmuch as equitable issues are properly tried to, and resolved by, the trial court, *see Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); *Ross v. Bernard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); 9 Wright and Miller, Federal Practice and Procedure § 2337 at 129–130 (1971), there is clearly no necessity for granting the plaintiff leave to present to the jury evidence in support of its equitable tolling claim.

In accordance with the foregoing, the plaintiff's motion for leave to present evidence to the jury panel in support of its various tolling contentions is hereby denied.

IT IS SO ORDERED.