JOHN A. LEWIS *vs.* ARIENS COMPANY.

No. 99-P-811.

Norfolk. December 17, 1999. - June 2, 2000.

Present: KASS, KAPLAN, & GELINAS, JJ.

Further appellate review granted, 432 Mass. 1107 (2000).

*Warranty. Consumer Protection Act,* Damages. *Snow Blower. Statute,* Retroactive statute. *Sale,* Warranty.

The manufacturer of a snow blower made in 1966 did not have a continuing duty to warn a remote purchaser, a person who had bought the machine second-hand in 1982, of the lack of an engine kill switch, first added to later-manufactured snow blowers beginning in 1972, and of the dangers of operating the machine without such a switch. [304-306]

General Laws c. 93A could not be retroactively applied to acts committed prior to its effective date, March 26, 1968, with the result that the purchaser of a used snow blower manufactured and originally sold in 1966, who was injured in 1988 due to the manufacturer's breach of implied warranty of merchantability, could not maintain a collateral claim under the statute. [306-308]

CIVIL ACTION commenced in the Superior Court Department on March 20, 1990.

Claims pursuant to G. L. c. 93A were heard by *Thomas E. Connolly,* J., and a motion to vacate and amend the judgment was also heard by him.

*Carol A. Kelly* for the defendant.

*Deirdre H. Robbins* (*Gerald W. Tutor* with her) for the plaintiff.

KASS, J. John A. Lewis, the plaintiff, lost four fingers of his right hand when they came in contact with impeller blades spinning in the discharge chute of a snow blower manufactured in 1966 by the defendant, Ariens Company. That was also the year the snow blower was sold at retail to its first owner. Lewis, in turn, bought the machine, used, in 1982 from the sister of a

friend of his wife.[1] The accident occurred January 26, 1988. A primary question on appeal is whether a purchaser of a used machine, i.e., a remote purchaser, may recover damages under G. L. c. 93A, based on a continuing duty to warn under the implied warranty of merchantability. We also consider whether it is consequential that G. L. c. 93A had not been enacted when Ariens made the snow blower and the original sale occurred. We decide that the trial judge erred in applying G. L. c. 93A in the circumstances of this case and reverse the c. 93A component of the judgment.

1. *Facts and procedural background.* Viewing evidence in the light most favorable to the plaintiff, the accident occurred when Lewis, attempting to disengage the tractor clutch, lost his footing on ice, and his hand slipped into the discharge chute of the snow blower. After a Superior Court trial in January, 1993, a jury returned special verdicts (see Mass.R.Civ.P. 49[a], 365 Mass. 812 [1974]) that found Ariens negligent in design of the snow blower but found Lewis to be fifty-two percent negligent. Lewis, therefore, could not recover on the negligence count in his complaint. G. L. c. 231, § 85. *Morgan v. Lalumiere*, 22 Mass. App. Ct. 262, 264 (1986). The jury further found, however, that the snow blower, when it was sold by Ariens, was not reasonably safe for its intended or reasonably foreseeable use. For this breach of implied warranty of merchantability, the jury awarded $205,000 in damages. Those findings are not a subject of appeal.[2]

After the jury verdict, returned January 29, 1993, the trial judge received memoranda and heard argument on the c. 93A count in the complaint. On June 21, 1993, the judge issued a memorandum deciding that a c. 93A claim did not lie because the implied breach of warranty of merchantability had occurred before c. 93A was on the statute books. General Laws c. 93A became law by St. 1967, c. 813, § 1. The effective date of the statute (i.e., ninety days after enactment) is March 26, 1968. The product was manufactured and sold no later than 1966. On

---

[1]The seller was liquidating household effects after her husband died. Whether the seller or a member of her family was the first buyer of the machine is not clear from the record. When Lewis bought it, the snow blower was in "like new" condition.

[2]Indeed, the record contains a stipulation dismissing the common-law counts of the complaint. We infer Ariens paid an amount equal to the breach of implied warranty verdict.

the basis of the judge's findings, decision, and order, a final judgment dismissing the c. 93A count was entered on June 30, 1993. Lewis filed a timely appeal.

For reasons not apparent from the record, the case became dormant for four years thereafter.[3] It showed a twitch of life on October 27, 1997, when Lewis moved for approval of the record on appeal but the case promptly relapsed into somnolence. Nothing happened for exactly another year (save for a notice of status review from the Superior Court). On October 27, 1998, Lewis moved to amend the "decision" of five years earlier, in effect a motion to vacate and amend the judgment. The trial judge received further memoranda, considered the case anew, and decided to "amend" his decision. He found as fact that:

> "Studies made shortly after or around the snow blower's initial sale demonstrated its dangers. In 1972, Ariens added an engine kill type of deadman's control that made the snow blower safer, but never sought to alter those snow blowers already in the stream of commerce."[4]

On the ground that Ariens knew or should have known of the defects in its 1966 model snow blower, the judge ruled that it had a continuing duty to warn "its customers about the snow blower's dangers." The judge concluded that Ariens had, therefore, violated c. 93A, and he thereupon (1) "vacated" his judgment of June 30, 1993; (2) awarded the plaintiffs[5] $205,000 in c. 93A damages; (3) doubled those damages to $410,000; and (4) awarded $55,520.50 in counsel fees and $12,249.65 in costs.[6]

---

[3]The docket shows that transcript was available promptly, on August 25, 1993. Ariens never moved to dismiss the appeal for want of prosecution.

[4]Two safety studies of snow blowers were received in evidence. One was published in November, 1971, by the United States Department of Health, Education, and Welfare. A second, a set of safety specifications rather than a study, was published in February, 1975, by the American National Standards Institute, Inc.

[5]The judgment under G. L. c. 93A runs in favor of plaintiffs because Lewis's wife, Muriel, joined in the complaint as a plaintiff, alleging loss of consortium. The jury found against Muriel Lewis on the loss of consortium count.

[6]Before the case went to the jury, the parties executed a high-low agreement under which Lewis and his wife would receive no less than $75,000 from Ariens and Ariens would be required to pay no more than $450,000, inclusive of interest, costs, and counsel fees, notwithstanding whatever jury verdict or judge's decision (on the c. 93A count) might be returned.

Now it was the defendant's turn to appeal and it is that appeal that is before us.[7]

2. *Continuing duty to warn.* As noted above, the trial judge, when he formulated his revised judgment in 1999, did so on the basis of Ariens's continuing duty to warn Lewis of risks discovered in the product manufactured and sold in 1966. Just what Ariens might have said to customers by way of additional warning need not detain us.[8] We accept the judge's finding of the existence of newly acquired risk information about which Ariens should have warned its customers. With the case so shaped, our examination can begin with the quite recent opinion in *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 19-23 (1998). In that case, the court abandoned a strict liability ap-

---

[7]We are at a loss to understand what basis the parties and the judge thought there was for a "motion to amend decision." Without wishing to make too much of the choice of words in the caption on a motion, that choice may reflect that the motion had no basis in a known rule of civil procedure. A motion lies to amend a judgment under Mass.R.Civ.P. 59(e), 365 Mass. 828 (1974), but such a motion must be made within ten days after the entry of judgment. Here the motion was made more than five years after entry of judgment. A motion lies for relief from judgment under Mass.R.Civ.P. 60(b), 365 Mass. 828 (1965). Of the six subcategories in rule 60(b), the first three, even if applicable to this case (which we do not begin to intimate) would require the motion to be made within a year of entry of judgment. The fourth and fifth categories are not remotely pertinent as matter of fact. That leaves only rule 60(b)(6), i.e., for "any other reason justifying relief from the operation of the judgment." The trial judge may have understood that was the only category on which he could act because he cast his ruling as "vacating" the previous judgment. Prescinding from its timeliness in this case, such a motion, i.e., one under rule 60(b)(6), may not be made to obtain general reconsideration of a judgment or to obtain relief for errors correctable on appeal. *Smith* v. *Arbella Mut. Ins. Co.*, ante 53, 55-56 (2000). See *Council for Employment & Economic Energy Use* v. *WHDH Corp.*, 580 F.2d 9, 13 (1st Cir. 1978), cert. denied, 440 U.S. 945 (1979); *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Commn.*, 394 Mass. 233, 236 (1985); *Amerada Hess Corp.* v. *Garabedian*, 416 Mass. 149, 156-157 (1993). See also Smith, Zobel, & Murphy, Rules Practice § 60.15 (Supp. 1999). The plaintiff's motion was improvidently brought and acted upon. The defendant Ariens has not, however, raised the infirmity of the motion and we are, therefore, disinclined to decide the appeal by reversing the amended judgment on that basis. Were we to do so, we ought then, in fairness, to allow the plaintiff to reinstate his appeal from the original judgment, putting us to the task of deciding the merits in any event, only from another direction.

[8]When sold, the snow blower came with printed operating instructions that began with safety warnings, the first of which was, "Stop engine before cleaning discharge, removing obstacles, making adjustments, or when leaving operating position."

proach to implied warranties of merchantability for failure to warn and adopted a standard congruent with Restatement (Third) of Torts: Products Liability § 2(c) (1998).[9]

A defendant was not to be "held liable under an implied warranty of merchantability for failure to warn or provide instructions about risks that were not reasonably foreseeable at the time of sale or could not have been discovered by way of reasonable testing prior to marketing the product." *Vassallo* v. *Baxter Healthcare Corp.*, *supra* at 23. A manufacturer would, however, "be held to the standard of knowledge of an expert in the appropriate field, and will remain subject to a continuing duty to warn (at least purchasers) of risks discovered following the sale of the product at issue." *Ibid.* The rub here is that Lewis was not a purchaser from Ariens. A manufacturer may devise means to encourage registration of original purchasers by requesting retailers to obtain registration information or offering inducements to customers for registering their purchases. The same contact points are not available between second-hand buyers and the manufacturer.

The parenthetical phrase, "at least purchasers," which appears in the *Vassallo* opinion, is not without history in Massachusetts cases. It appears in similar context in *doCanto* v. *Ametek, Inc.*, 367 Mass. 776, 784-785 (1975), and, later, with emphasis, in *Hayes* v. *Ariens Co.*, 391 Mass. 407, 411 (1984). The *Hayes* case involved an accident similar to that which occurred in the instant case, including the circumstance that the person injured had bought the snow blower second-hand. The court remarked, "we have never said that a manufacturer has a duty to warn remote purchasers, such as Hayes, of risks in the use of a product that have been discovered or have become discoverable only after the product has entered the stream of commerce."

On the subject of liability for post sale failure to warn, § 10(b)(2) of the Restatement (Third) of Torts: Products Liability (1998), includes as a criterion of reasonable decision making by a seller of products a calculus whether those to

---

[9]That subsection of the Restatement reads: "A product: . . . (c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe."

whom a warning might be provided can be identified. Comment a to § 10 observes that "[t]he costs of identifying and communicating with product users years after sale are often daunting." The comment adds that, "[i]n light of the serious potential for overburdening sellers in this regard, the court should carefully examine the circumstances for and against imposing a duty to provide a post-sale warning in a particular case."

We are of opinion that, generally, a person who buys a machine second-hand is a member of a universe too diffuse and too large for manufacturers or sellers of original equipment to identify. The case before us illustrates the problem. Post-sale studies in 1971 and 1975 described accidents that had occurred with snow blowers and made recommendations for warnings and protective measures. Warnings contemporaneous with those studies would not have benefited Lewis, who did not buy his second-hand Ariens snow blower until 1982. Were warnings to be broadcast at periodic intervals, and through what medium? We are not prepared to adopt as a general rule a requirement to update warnings to the owner of a product who has purchased it second-hand, third-hand, or fourth-hand.[10]

3. *Chapter 93A damages based on breach of implied warranty at time of sale.* Although the trial judge pitched his revised judgment on the defendant's continuing duty to warn, there is an overtone in the findings of fact made by him on February 23, 1999, in support of the amended judgment of March 1, 1999, that there were safety defects in the snow blower as originally sold in 1966 and inadequate contemporaneous warning as to dangers inherent in the product, i.e., that Ariens committed a breach of implied warranty of merchantability at the time of first sale. Against the possibility that the judge rested his c. 93A judgment on that basis — Lewis contends vigorously on appeal that he might have done so — we examine whether that breach is a foundation for a c. 93A action. It will be recalled the jury found that the snow blower when it was sold by Ariens was not reasonably safe for its intended use or for its reasonably foreseeable misuse, and that the lack of reasonable safety was a substantial cause of injury to Lewis. The evidence allowed —

___

[10]One may imagine cases where the danger in a product is so urgent and would affect potentially such a large number of people that the manufacturer would have a duty to warn secondary buyers by recourse to the internet and advertisements through electronic and print media.

although it did not compel — such a finding.[11] The judge, therefore, had an equal basis for making such a finding in the c. 93A aspect of the case.

Since the abolition of privity in the sale of goods by St. 1971, c. 670, § 1, amending G. L. c. 106, § 2-318, a breach of warranty of merchantability sustains an action for damages, "although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer . . . might reasonably have expected to use . . . the goods." Thus, Lewis, a person injured by a product that he purchased second-hand, was able to — and did — bring an action against the manufacturer who introduced the product into the stream of commerce. See *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 34-36 (1977); *Cameo Curtains, Inc.* v. *Philip Carey Corp.*, 11 Mass. App. Ct. 423, 427 (1981).

Generally, a breach of warranty of merchantability may support a collateral count under G. L. c. 93A. *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 193 (1990) (citing cases). The sale of a product whose imperfection in design or manufacture gives rise to a common-law action may also be an unfair and deceptive act within the meaning of G. L. c. 93A, and the manufacturer may suffer that additional liability when the consequence of the unfair and deceptive act is injury. As earlier remarked on, in the instant case, the product — the snow blower — was manufactured and sold in 1966, approximately two years before c. 93A was enacted by St. 1967, c. 813, § 1, and became effective March 26, 1968. Rights under G. L. c. 93A are substantive in nature. *Commonwealth* v. *DeCotis*, 366 Mass. 234, 244 n.8 (1974), and accompanying text. Acts by Ariens in 1966 could not have violated c. 93A because the statute and the rights it created did not then exist. Chapter 93A may not be retroactively applied to acts committed prior to its effective date. *Ibid. Gopen* v. *American Supply Co.*, 10 Mass. App. Ct. 342, 348-349 (1980).

It does not help Lewis to point to cases such as *International Mobiles Corp.* v. *Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 218-221 (1990), that stand for the proposi-

---

[11]There was evidence, for example, that in 1966 manufacturers of snow blowers were aware of the utility, as safety measures, of dead-man switches (a switch that would turn the machine off as soon as the user released hand pressure on it) and an M-wire, a wire bent in the shape of that letter which could be placed at the mouth of the discharge chute, thereby serving as a physical reminder to the machine user not to stick a hand into the chute.

tion that a c. 93A claim based on an underlying tort accrues when the injury is recognizable. Those cases postpone the date when the statute of limitations on a c. 93A claim begins to run. They do not move the time the wrong occurred forward to a date when c. 93A had come onto the statute books.

We are unpersuaded by the argument of Lewis that Ariens waived its right to argue that c. 93A was not applicable to the breach of warranty of merchantability claim that attended the original sale of the snow blower in 1966. The record establishes that the argument was made at the time of the first briefing and argument of the question of c. 93A liability before the trial judge, i.e., back in 1993. Lewis manifested no surprise by assertion of that issue at the time. The evidence solidly supported the trial judge's finding that the manufacture and original sale of the snow blower Lewis acquired occurred in 1966.

4. *Conclusion.* The amended judgment on Lewis's consumer protection claim under G. L. c. 93A is reversed. The case is remanded to the Superior Court for the entry of a judgment for the defendant on count IV of the complaint.

*So ordered.*